## JOSEPH WERNE & POPE *v.* SARAH M. HENISOHN.

**Husband and Wife—Mortgage—Coercion of Wife—Foreclosure.**

> Where one whose note had been forged to a bill exercises his advantage to procure from the wife of the forger, the pledge of her property for his indemnity on the forged obligation, by threatening prosecution of the husband, the creditor can not receive the assistance of a court of equity in enforcing the mortgage against the wife's property.

APPEAL FROM LOUISVILLE CHANCERY COURT.

February 11, 1873.

OPINION BY JUDGE LINDSAY:

Whether the certificate of the clerk is conclusive evidence that Mrs. Henisohn was examined separately and apart from her husband when she acknowledged the mortgage to Werne and Pope, is a question that does not arise in this case, whatever may have been the circumstances attending the acknowledgment before the deputy clerk on the morning of the 27th of November, 1869. The certificate of Conn, the clerk, shows that it was acknowledged before him on the same day. This certificate is not attacked, and for the purposes of this case its verity can not be questioned. Still we are of the opinion that the cross-petition of Werne & Pope was properly dismissed.

The proof justifies the conclusion that Henisohn had forged the name of Werne to various bills, one of which would mature on the day upon which the mortgage was executed. Henisohn felt that

exposure was certain unless Werne could be secured and also be induced to take up this forged bill. The mortgage herein sought to be enforced was drafted at midnight, by an attorney who had evidently prepared himself, or been furnished with a minute description of Mrs. Henisohn's property, in contemplation of its being executed on that identical night. Mrs. Henisohn had evidently been notified of what was to be done. When the attorney objected to going to her house at one o'clock, a. m., to obtain her signature, he was informed by the husband, in the presence of the mortgagee, that she was waiting for them. She signed the paper without reading it, and knew nothing of its contents until afterwards, unless it was explained to her by her husband during the conference between them before coming into the presence of the attorney and mortgagee where she did the signing.

The deputy clerk was at her house that morning to obtain her acknowledgment before the breakfast hour had passed.

It is perfectly manifest that she was induced to act in this matter by the alarm and apprehension excited by the criminal charges brought against her husband. She had no opportunity to consult her friends or to advise with any one. At the time she signed and acknowledged the mortgage she was not equal to protecting herself.

Werne felt that he had the husband in his power, and he used his advantage to procure from the wife the pledge of her property for his indemnity. Under such circumstances he should receive no assistance from a court of equity. It does not matter that Mrs. Henisohn did not act under actual constraint, or imprisonment. It is manifest that she had no will of her own. In estimation of law the will of a married woman is all the while subordinated to that of the husband. Hence the law provides protection for her against the undue influence of the husband in making deeds of her real estate. Here Werne, the beneficiary in the mortgage, is clearly and directly responsible for the unusual and hurried manner in which Mrs. Henisohn was induced to execute it. He knew that the presumption arising from the certificate of the clerk, that the appellee voluntarily acknowledged the instrument, was false. He knew that when she acted her will was not free, and that her mind did not accord with the act. If an actual fraud was not practiced upon her, he and her husband preyed upon her fears until they im-

prisoned her will and then took advantage of her weakness. All this the testimony of the attorney, who acted for her at the time, establishes almost beyond a rational doubt. The chancellor could do nothing less than to refuse to become a party to the transaction. Pope's claim seems to have been included in the mortgage without his knowledge, yet it is difficult to perceive how he can avail himself of an equity secured to him, if at all, by an instrument executed as this one was. However innocent he may be, the conduct of Werne, through whose instruction the mortgage was obtained, must be imputed to all who claim under it. He parted with nothing upon the faith of the mortgage and if it was cancelled neither he nor Werne would be placed in a more unfavorable attitude than they occupied before its execution.

Judgment *affirmed*.

*Joseph Speed, P. Joyes, for appellee.*

*Muir, for appellant.*